IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GEORGES BENAMOU, DOMONIQUE IFERGAN, and MICHELLE TUSTES, § § § Plaintiffs, § v. § WELLS FARGO BANK NATIONAL ASSOCIATION, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Baked Pass-Through Certificates, § § § § § § § Defendant. § | CIVIL NO. 3:16-CV-401-L-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Order of Reference*, Doc. 16, this case has been referred to the Magistrate Judge for a recommendation on Defendant's *Amended Motion for Summary Judgment*. Doc. 13. For the reasons discussed below, it is recommended that the motion be **GRANTED** to the extent stated herein.

## BACKGROUND

**A.  Procedural History**

This civil case stems from Defendant's attempts to foreclose on Plaintiffs' residence at 6050 Burgundy Road, Dallas, Texas 75230 (the "Property"). Doc. 1-1 at 10, 19. On September 15, 2015, *Plaintiffs' Original Petition for Declaratory Judgment & Request for Disclosure* was filed in the 191st Judicial District Court of Dallas County, Texas, in which Plaintiffs allege that Defendant's attempt to foreclose on a home-equity lien ("the Lien") on the Property (1) violates the Texas Constitution; (2) constitutes fraudulent misrepresentation; and (3) is outside of the

applicable statute of limitations.  Doc. 1-1 at 12-16.  Plaintiffs request a judgment declaring that the Lien and Deed of Trust are therefore unenforceable.  Doc. 1-1 at 13, 15-16.

For a second time,[1] Defendant has removed the case to this Court on the basis of diversity jurisdiction.  Doc. 1 at 1-2.  Simultaneously, Defendant filed counterclaims against Plaintiffs for equitable subrogation, fraud and fraudulent inducement, contractual indemnity, and declaratory relief, arguing, *inter alia*, that Defendant assumed the prior lender's lien position and right to foreclose since the loan proceeds were used to pay off the pre-existing lien on the Property.  Doc. 1-1 at 106-109.  Defendant avers that it asserts its counterclaims "in the unlikely event Plaintiffs establish" invalidity of the lien "based on alleged violations of the provisions of the Texas Constitution pertaining to home equity loans."  Doc. 1-1 at 106.  Defendant now moves for summary judgment in its favor on all of Plaintiffs' claims or, in the alternative, on its counterclaims.

**B.     Factual Background**

Plaintiffs are joint owners of the Property, which is Benamou's homestead.  Doc. 1-1 at 10, 21.  In August 2006, Benamou, with the consent of Plaintiffs Tustes and Ifergan, obtained a home equity loan (the "Loan") on the Property in the amount of $375,000.  Doc. 1-1 at 13; Doc. 15-1 at 5.  The Loan proceeds were used to pay off a prior home loan that Benamou had obtained in 2004 from Countrywide Home Loans, Inc. (the "Countrywide Loan"), and the remaining cash was distributed to Plaintiffs.  Doc. 15-1 at 96; Doc. 15-1 at 121, 125.  Beginning in February 2010, Plaintiffs fell behind on their Loan payments, Doc. 15-1 at 11, after which Defendant first

---

[1] (N.D. Tex. Oct. 23, 2015) (order sua sponte remanding case to state court for lack of subject matter jurisdiction where Defendant failed to establish the residency of Tustes and Ifergan). Based on subsequent discovery responses by Tustes and Ifergan that they are domiciled in France, Defendant again removed the case to this Court.

...
...

initiated foreclosure proceedings which have been ongoing since. Plaintiffs filed this lawsuit in attempt to stop the foreclosure.

**C.     Applicable Law**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005). Nevertheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.

**D.     Arguments**

Plaintiffs contend that the Loan agreement is void under the Texas Constitution because,

*inter alia*, (1) the Loan amount was more than 80 percent of the property value and (2) Tustes' spouse did not consent to the Loan. Doc. 1-1 at 12-13. Plaintiffs also contend that Defendant fraudulently misrepresented that Plaintiffs financially qualified for the Loan, and that Plaintiffs relied on said misrepresentations to their detriment by pledging the Property to guarantee the Loan, which they could not afford to repay. Doc. 1-1 at 13-14. Finally, Plaintiffs allege that foreclosure is barred by the applicable four year statute of limitations, since Defendant accelerated the Note in December 2010, following Plaintiffs' default by non-payment, but did not initiate foreclosure proceedings until more than four years after the acceleration. Doc. 1-1 at 15-16.

In its Motion for Summary Judgment, Defendant argues, *inter alia*, that even assuming the Lien arose from a home equity loan transaction that violated the requirements of Article XVI, Section 50(a)(6) of the Texas Constitution,[2] it is nonetheless enforceable and subject to foreclosure to the extent that the proceeds of the Loan were used to pay off the Countrywide debt. Doc. 14 at 12-13. Defendant also argues that Plaintiffs' claim for fraud is barred by the

---

[2] As is relevant here, the Texas Constitution provides:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made.

Tex. Const. art. XVI, § 50(a)(6).

applicable statute of limitations since it accrued at the time of the origination of the Loan in August 2006 or, at the latest, when Plaintiffs knew they could not make the payment that was due in February 2010, yet they did not file this action until September 2015. Doc. 14 at 2, 6.

Finally, Defendant argues that its right to foreclose is not barred by limitations, as Plaintiffs have alleged, since it abandoned the previous accelerations of the Note within four years of their initiation, thereby restarting the limitations clock. Doc. 14 at 8-11. Defendant requests (1) a final summary judgment that Plaintiffs take nothing; and (2) a declaration that Defendant has an equitable lien on the Property in the amount of $248,951.94, the remaining balance owed on the Countrywide Loan, plus interest at the rate of 6% per annum from September 6, 2006, which can be enforced through foreclosure.

**E.   Summary Judgment Evidence**

Defendant's uncontroverted evidence establishes that, on August 31, 2006, Plaintiffs executed the Note in the principal amount of $375,000 plus interest. Doc. 15-1 at 5. On that same day, Plaintiffs executed a Home Equity Security Instrument granting a security interest in the Property. Doc. 15-1 at 54. At the time of the origination of the Loan, the Property was already subject to Countrywide's deed of trust dated October 27, 2004, which granted a security interest to the lender in the amount of $252,000. Doc. 15-1 at 96. As of August 31, 2006, the remaining balance owed on the Countrywide Loan was $248,951.94, and the proceeds of the Loan extended by Defendant were used to pay off the Countrywide loan and extinguish that lien. Doc. 15-1 at 121.

**F.   Analysis**

Plaintiffs oppose summary judgment, arguing that there are genuine issues of material fact relating to the start of the limitations period. Doc. 18 at 2-3. The Court disagrees.

*1. Fraud*

The statute of limitations for a fraud claim is four years, TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), and does not begin to run "until [the fraud] is discovered, or by the exercise of reasonable diligence might have been discovered." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) (*quoting Ruebeck v. Hunt*, 142 Tex. 167, 176 (1943)). The determination of when the fraud might have been discovered through the exercise of reasonable diligence is generally an issue of fact. *Id* at 58. But if a party is aware of their injury and that it was likely caused by the wrongful acts of another, then the limitations period commences even if the party does not know the identity of the wrongdoer. *Lazo Techs., Inc. v. Hewlett-Packard Co.*, No. 05-14-01060-CV, 2016 WL 80952, at *3 (Tex. App. – Dallas 2016, pet. denied). Additionally, where a plaintiff has actual or constructive notice, such as when information is readily accessible and publicly available, the limitations period commences. *Hooks*, 457 S.W.3d at 58.

Here, Plaintiffs allege that (1) they did not discover the alleged fraud in the Loan application until much later than the date of the transaction; and (2) there is a factual dispute as to when the statute of limitations began to run since they were unsophisticated borrowers. Doc. 18 at 2. The evidence does not support their claims. The allegedly false information regarding Benamou's income was explicitly stated in the Loan origination documents Benamou signed. *See Benamou, et al. v. Wells Fargo Bank Nat'l Ass'n*, 3:15-CV-3367-L Doc. #1-1 at 23. Indeed, no one was in a better place than Benamou to determine whether his reported income information in the Loan application was correct. That notwithstanding, Benamou was in the best position to determine his ability or inability to afford the monthly payments, which were disclosed at closing or, in any event, no later than his first monthly mortgage statement. Doc. 7-

1 at 6.  Further, Plaintiffs' claim of unsophistication is belied by the assertion in their original petition that the transaction at issue was only the last in a string of transactions refinancing the mortgage loan through the same mortgage broker.  Doc. 1-1 at 11.

On this record, there is no genuine issue of material fact regarding the expiration of the limitations period or that the limitations period was not extended by virtue of the discovery rule. *Hooks*, 457 S.W.3d at 57-58.  Accordingly, Plaintiffs' fraud claim is barred by limitations and summary judgment should be **GRANTED** to Defendant on this claim.

### 2. *Foreclosure*

Defendant argues that its right of foreclosure has not been extinguished by virtue of limitations as Plaintiffs contend, because it timely rescinded its prior notices of acceleration of the Note, thereby resetting the clock. Doc. 14 at 8-11.  Under Texas law, a secured lender must bring suit for the foreclosure of a real property lien no later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a).  If the note or deed of trust contain an optional acceleration clause, the cause of action for foreclosure accrues when the noteholder actually exercises its option to accelerate.  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

In order to exercise its option to accelerate, the noteholder must give two clear and unequivocal notices: (1) notice of intent to accelerate, and (2) notice of acceleration. *Id.*  A lender is allowed to unilaterally waive or rescind acceleration by sending notice to the borrower at the borrower's last known address.  TEX. CIV. PRAC. & REM. CODE §16.038 (b) & (c).  Even if a noteholder has accelerated the note, it abandons that acceleration by continuing to accept payments thereafter.  *Holy Cross,* 44 S.W.3d at 566-67.  Sending acceleration warnings that request payment on less than the full amount of a loan also gives notice to the borrower that any

prior acceleration attempts were abandoned. *Martin v. Fed. Nat. Mortg. Ass'n,* 814 F.3d 315, 318 (5th Cir. 2016).

Here, Plaintiffs argue that Defendant's termination of its last notice of acceleration came more than four years after the initial acceleration. Doc. 18 at 1-3. However, the uncontroverted evidence reflects that Defendant accepted payments on the Loan until February 2010. Doc. 15-1 at 3. By accepting payments through February 2010, Defendant abandoned any prior acceleration attempts. *Holy Cross,* 44 S.W.3d at 566-67.

The uncontroverted evidence also shows that on August 17, 2011 and September 11, 2012, Defendant sent Plaintiff Benamou notices of intent to accelerate the Loan. Doc. 15-1 at 11, 18. However, both of these notices state that Plaintiffs could bring the Loan current by making only their missed payments, indicating that the entire outstanding balance of the Loan was not due at that time. Doc. 15-1 at 11, 18. By sending acceleration warnings requesting payment on less than the full amount of the Loan, Defendant gave Plaintiffs notice that any prior acceleration attempts were abandoned. *Martin*, 814 F.3d at 318.

Finally, the uncontroverted evidence proves that Defendant sent unequivocal notices of acceleration in December 2011 and January 2014. Doc. 15-1 at 28, 30, 32, 38, 40, 42, 44, 46, 48. However, on October 19, 2015, both accelerations were abandoned when Defendant sent Plaintiffs a Notice of Rescission and Waiver of Accelerated Maturity Date. Doc. 15-1 at 76, 81, 86. Because all accelerations of the Loan were abandoned on or before October 19, 2015, which was within four years of both notices, Defendant's right to foreclosure is not barred by the statute of limitations. Thus, no genuine issue of material fact remains as to this issue and summary judgment should be **GRANTED** in Defendant's favor.

### *3. Equitable Subrogation*

In its supporting brief, Defendant asserts that it is its right to have its lien on the Property preserved by equitable subrogation principles, regardless of any constitutional violations that Plaintiffs have asserted. Doc. 18 at 1-2. Defendant's argument has merit.

Equitable subrogation allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor." *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007). Equitable subrogation claims are valid even when the property is a homestead and the refinance in question was unconstitutional, so long as loan funds were used to pay off a valid lien. *Id.* When a party is entitled to create a lien through equitable subrogation, the amount of that lien is limited to the payoff amount of the original lien plus legal interest from the date of the payoff. *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 633 (Tex. App.—Houston [14th Dist.] 2010). Moreover, when no other rate is specified or bargained for between the parties, the legal rate of interest allowed is six percent a year on the principal amount of credit extended. TEX. FIN. CODE § 302.002.

Homeowners must have "the ability to renew, rearrange and readjust the encumbering obligation" on their homesteads to prevent the loss of the home to foreclosure. *LaSalle Bank,* 246 S.W.3d at 620 (quotation omitted). "Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens." *Id.*

Here, it is uncontested that the proceeds from the Loan were used to pay off the Countrywide lien on the Property in the amount of $248,951.94. Doc. 15-1 at 121. Nevertheless, Plaintiffs contend that because this case involves the proceeds of a home equity

9

loan being utilized to repay a prior home equity loan, the principles of equitable subrogation do not apply. Doc. 17 at 2. Plaintiff's position finds no support in the law, however. The principle of equitable subrogation has long been recognized in Texas state law, where it has been applied to prior liens created through any manner of transaction relating to homestead property, so long as the prior lien was legal. *LaSalle*, 246 S.W.3d at 619.

Plaintiffs also argue that because only Plaintiff Benemou was a party to the Countrywide loan, it would be inequitable to Plaintiffs Tustes and Ifergan for the Court to allow Defendant to equitably subrogate the Loan to which they were not parties. Doc. 17 at 2. However, Plaintiffs Tustes and Ifergan were granted their two-thirds interest in the Property by warranty deed on March 25, 2005, Doc. 19-1 at 2, which was after the Countrywide lien was created, Doc. 15-1 at 121. Thus, Plaintiffs Tustes' and Ifergan's two-thirds interest was always subject the Countrywide lien. Converse to their argument, it would be inequitable for them to benefit from extinction of the Countrywide lien by Defendant's payoff out of the proceeds of the Loan that they were party to and now contend is uncollectable. Under equitable subrogation, each Plaintiff is in the same position with respect to their interests in the Property as when they took out the Loan that is the subject of this litigation.

Accordingly, Defendant is entitled to summary judgment on its equitable subrogation counterclaim, to-wit: Defendant should be granted an equitable lien on the Property in the amount of $248,951.94 plus interest at the rate of 6% per annum from September 6, 2006, and a declaration that said lien can be enforced through foreclosure. *Chase Home*, 309 S.W.3d at 633.

**E. Conclusion**

For the reasons stated above, Defendant's *Amended Motion for Summary Judgment*, Doc. 13, should be **GRANTED** as stated herein.

**SO RECOMMENDED** on February 5, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE